UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAR 0 8 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-29-GWU

TIMOTHY GREGORY,                                                    PLAINTIFF,

VS:                          MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT,

## INTRODUCTION

Timothy Gregory brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes,

1

the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply.  Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. <u>Id</u>. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Id</u>.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir.  1984); <u>King v. Heckler</u>, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. 404.1521, 416.921.   The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term.  Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985).  The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment,"  Landsaw v. Secretary of Health and Human Services,  803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work.  Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987).  The plaintiff is said to make out a  prima facie case by proving that she or he is unable to return to this work.  Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir.  1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

3

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range

4

of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual."  20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Gregory, a 43 year-old former coal miner with a high school equivalent education, suffered from "severe" impairments. (Tr. 90, 97).  While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 97-98). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 98).  The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 96-97).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert James Miller included an exertional limitation to light level work along with such non-exertional limitations as (1) an inability to climb ladders; (2) an inability to more than

5

occasionally climb stairs, stoop, crouch, crawl or kneel; (3) a need to avoid exposure to dust, fumes, smoke, chemicals, or noxious gases; (4) a "limited but satisfactory" ability to relate to co-workers, to deal with the public, to deal with work stresses, to maintain attention and concentration, to work close to others without undue distraction, and to respond appropriately to changes in the work setting. (Tr. 130-131). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 131). The ALJ then added a restriction regarding a sit/stand option in intervals of 15 minutes to the aforementioned restrictions. (Tr. 131). The witness again identified a significant number of jobs in the national economy which could still be done. (Tr. 132). Therefore, assuming that the vocational factors considered by Miller fairly depicted Gregory's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

Gregory was found capable of performing a restricted range of light level work in an administrative decision which became final on September 22, 1997. (Tr. 138-147). Among the non-exertional restrictions found by the prior ALJ were (1) an inability to climb ladders, ropes or scaffolds; (2) an inability to more than occasionally stoop; (3) a need to avoid exposure to pulmonary irritants; (4) a need to avoid exposure to temperature extremes and humidity; and (5) a "moderately" limited ability to maintain attention and concentration for extended time periods, to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to interact appropriately with the general public. (Tr. 140-141). Principles of res judicata require that the administration be bound by this decision unless a change of circumstances is proved upon a subsequent application. Drummond v.

6

Commissioner of Social Security, 126 F.3d 837, 842 (6th Cir. 1997). Acquiescence Ruling 98-3(6) instructs that the agency "must adopt [the residual functional capacity finding] from a final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is "new and material" evidence relating to such a finding..." In the present action, the ALJ concluded that there had been no relevant change in the plaintiff's physical condition. (Tr. 90).

Dr. Ronald Dubin treated Gregory for knee problems between February and April of 2001. (Tr. 235-241). When last seen by Dr. Dubin, the plaintiff was noted to be doing much better and was "very satisfied with his results." (Tr. 236). The claimant intended to go hunting and resume his activities. (Tr. 236). This opinion does not suggest a deterioration in Gregory's condition.

In August of 2001, Gregory was treated by Dr. Randall Walters at Pineville Community Hospital for diabetic ketoacidosis which had resolved upon discharge. (Tr. 242). The patient was noted to be suffering from a newly diagnosed onset of Type 1 Diabetes and chronic obstructive pulmonary disease. (Tr. 242). In May of 2002, the physician treated the claimant for a right thumb injury at Pineville. (Tr. 276-286). The plaintiff continued a treating relationship with Dr. Walters. (Tr. 287-296, 349-352, 354-357). In January of 2003, the doctor added the diagnoses of right shoulder bursitis and allergic rhinitis. (Tr. 354). The only activity restrictions ever indicated by the doctor were a need for the claimant to quit smoking, to maintain a disease-appropriate diet and to exercise within reason. (Tr. 290-291, 293, 296). This opinion also appears compatible with the ALJ's decision.

Dr. Maurice Page saw Gregory in June of 2002 in regard to the right thumb injury. The physician did not identify the existence of more severe

7

physical limitations than those found by the ALJ. (Tr. 306-308).

Dr. Charles Moore examined Gregory in July of 2003. Dr. Moore's treatment note did not identify any functional limitations. (Tr. 359).

The record was reviewed by Dr. Parandhamulu Saranga (Tr. 309-317) and John Rawlings (Tr. 318-328). The reviewers each reported the existence of a limitation concerning an inability to more than occasionally crouch, crawl and kneel which had not been found in the prior administrative decision. (Tr. 311, 322). However, these restrictions were presented in the hypothetical question to James Miller. Therefore, any error on the part of the ALJ in making a finding of no change in the plaintiff's condition would appear harmless.

Dr. Thadis Cox, an examining consultant, indicated that Gregory would be "moderately" limited in his ability to stoop, bend, reach, sit, stand, move about, lift, carry, handle objects, and travel. (Tr. 257). The restrictions regarding reaching, handling objects, sitting, and standing are more severe limitations than those found in the prior decision. As previously noted, a sitting and standing limitation was considered by Miller who identified a significant number of jobs. Thus, any error in not including this among the ALJ's findings was harmless. Moreover, neither of the reviewers indicated that the plaintiff had a limitation with regard to reaching or handling. (Tr. 312, 323). Dr. Cox did not indicate what objective clinical findings supported such restrictions. Upon physical examination, the doctor reported normal grip strength, no joint deformities, and no motor deficits. (Tr. 256-257). Therefore, under these circumstances, his opinion does not demonstrate a deterioration in the claimant's condition from the prior denial decision.

Gregory asserts that the ALJ erred in failing to find any physical deterioration since the September, 1997 denial decision noting his recent

8

diagnoses of diabetes mellitus, arthritis of the right knee, chronic obstructive pulmonary disease, and bilateral foot problems as well as recent right knee surgery. The physical impairments found in September of 1997 were chronic low back pain due to degenerative disc disease, a history of asthmatic bronchitis secondary to smoking and a history of hypertension controlled by medication. (Tr. 140). However, the mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). As previously noted, such physicians of record as Dr. Dubin and Dr. Walters did not report the existence of more severe limitations than had been previously found while the reviewers' additional postural limitations were presented in the hypothetical question relied upon in the current action. Dr. Cox suggested a more severe restriction relating to reaching and handling objects, but these were not well-supported by his own physical examination results. Therefore, under these circumstances, the Court finds that the ALJ's findings with regard to Gregory's physical condition are supported by substantial evidence.

The Court also finds no reversible error with regard to the ALJ's treatment of the evidence of record relating to Gregory's mental condition. Dr. Chintamani Vora was the only mental health professional to examine the plaintiff during the relevant time period. Dr. Vora diagnosed an anxiety disorder secondary to medical condition and alcohol abuse in remission. (Tr. 274). The claimant's current Global Assessment of Functioning (GAF) was rated at 70. (Tr. 275). Such a GAF suggests the existence of only "mild" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual Disorders (4th Ed.-Revised, 1994). The examiner indicated that claimant would have "fair" ability to tolerate the stress and pressures of work activity as

9

well as relate to others. (Tr. 275). These restrictions are compatible with those presented in the hypothetical question. Psychologist Jane Brake, a non-examining medical reviewer, identified a number of mental limitations on a Mental Residual Functional Capacity Assessment Form. (Tr. 329-330). To the extent that these might be considered more severe than those found by the ALJ, then they are outweighed by the opinion of Dr. Vora, the examining source.[1]

Gregory argues that the ALJ erred because the hypothetical question did not include all of the mental limitations found by the ALJ in the prior denial decision despite the ALJ's assertion that she found no "material" change in the plaintiff's condition since the prior decision. The mental factors found by the prior ALJ included a "moderate" limitation of ability to maintain attention and concentration for extended time periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and to interact appropriately with the general public. (Tr. 141). These limitations are somewhat different from those found by the current ALJ and presented in her hypothetical question. However, since there was no significant change in the plaintiff's age, the job information relating to the hypothetical question in the prior denial decision would presumably still apply and support the current administrative decision. (Tr. 146). Furthermore, the current hypothetical question was compatible with the findings of Dr. Vora and, so, any error would appear harmless. Therefore, the Court must reject the plaintiff's argument.

Gregory asserts that the ALJ erred in interpreting Dr. Vora's assessment of "fair" as ability is "limited but satisfactory." As previously noted, the examiner

---

[1]The administrative regulations provide that examining sources are usually given more weight than non-examining reviewers. 20 C.F.R. Section 416.927(d)(1).

rated the plaintiff's GAF at 70, suggesting the existence of only "mild" psychological symptoms. Thus, the ALJ's interpretation appears quite reasonable.

Finally, Gregory argues that the ALJ should have obtained the reports of Reba Moore and James Leisenring, mental health professionals who examined him in 1993, during the time period pertinent to the September, 1997 denial decision. If these reports were insufficient to prove that the plaintiff was totally disabled in 1997, the Court does not see how they could help with the current application. At the very least, they would be offset by Dr. Vora's modest findings from the current time period. Therefore, the Court must reject the claimant's argument.

The Court notes that Gregory submitted additional medical records directly to the Appeals Council which were never seen by the ALJ. (Tr. 10-82, 361-364). This action raises an issue concerning a remand for the taking of new evidence before the Commissioner. Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993). A court may order additional evidence be taken before the Commissioner, "...but only upon a showing that there is new evidence to be taken which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding..." 42 U.S.C. Section 405(g). The plaintiff has failed to adduce any arguments as to why such a remand would be required.

After a review of the evidence presented, the undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this

11

opinion.

This the 8 Day of March, 2006.

G. WIX UNTHANK
SENIOR JUDGE